# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

Plymouth, ss.                                    Superior Court Department

| | |
|---|---|
| TIM BALLINGER,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF KINGSTON, MAURICE J. SPAINE, and ROBERT H. FENNESSY, JR.,<br><br>Defendants. | CIVIL ACTION NO. 1783CV1247B<br><br>**JURY DEMAND** |

## **FIRST AMENDED COMPLAINT**

### I. Introduction

1. This action arises out the unlawful conduct of Defendants Kingston Police Department, Maurice J. Splaine, and Robert H. Fennessy, Jr., when the Defendants discriminated against Plaintiff Tim Ballinger on the basis of his disability, failed to accommodate the Plaintiff's disability, invaded his privacy by sharing his medical records with the Board of Selectmen for the Town of Kingston without the Plaintiff's permission, and placed Plaintiff on administrative leave because of his testimony at a union hearing. The Plaintiff seeks damages of lost wages, emotional distress, reimbursement for used sick-time, punitive damages, and recovery of their attorneys' fees, as well as all other relief as allowed by law.

### II. Parties

2. Tim Ballinger is an adult male resident of Kingston, MA and a sergeant in the Kingston Police Department.

3. Defendant Maurice J. Splaine is a resident of Massachusetts and the chief of

police of the Kingston Police Department ("Department"), which is a department of the Town of Kingston.

4. Defendant Robert H. Fennessy, Jr., is a resident of Massachusetts and the Town Administrator for the Town of Kingston.

5. Defendant Town of Kingston is a duly chartered municipality within the Commonwealth of Massachusetts, which operates a police department.

### III. Facts

6. In August 2006, Ballinger was injured in the line of duty. As a result of his injury, Ballinger was out of work off and on for two years. He returned to work full time around 2008 with a diagnosis of post-traumatic stress disorder and other cognitive limitations, which were disclosed to the Department in numerous medical documents at the time of his return.

7. Splaine was a lieutenant at the time of Ballinger's injury.

8. In his role as lieutenant, Splaine was responsible for ensuring that Ballinger's injury was covered through the state workers' compensation program for public safety officers, known as injured-in-the-line-of-duty benefits, which is codified as M.G.L. c. 41, § 111F.

9. Ballinger continued to work for the Department after his return to work. He was placed in the detective unit upon his return from medical leave as the Department's court prosecutor.

10. Splaine assumed the position of chief of the department in January 2013, and was sworn in full time in March 2013. At the time, he knew about Ballinger's on the job injury and the associated limitations due to the injury.

11. On or about February 17, 2017, Ballinger testified at a hearing regarding potential discipline of another superior officer of the Department. This superior officer has also been

previously diagnosed with PTSD and recently disclosed the diagnosis to Splaine.

12. Ballinger testified that he has also been injured in the line of duty and that he had PTSD as a result. He did not testify about any symptoms or any limitations associated with the injury.

13. On or about March 8, 2017, Ballinger received a letter from Lieutenant Thomas Kelley, the lieutenant in charge of administration, ordering him to attend an interview the following day. The interview ended up being about Ballinger's PTSD.

14. About five days later, Ballinger arrived at work and was told that Splaine found that he was psychologically unfit to work. Ballinger was ordered to hand in his service weapon and badge and was placed on paid administrative leave for ten days. After the ten days, he was forced to use his accrued sick time for the remainder of his leave.

15. Ballinger has not been allowed to return to regular duty since March 14, 2017.

16. Upon information and belief, Splaine also harbored animus at Ballinger after his testimony for the additional reason that Ballinger had testified in support of a superior officer who had a long-standing dispute with the Department.

17. Ballinger has a legal right to testify in support of a member of his union without retaliation from a member of management. Splaine is aware of this right.

18. Soon after removing Ballinger from regular duty, Splaine ordered Ballinger to provide all of his medical records regarding his prior injury and treatment to the Department, even though the records has already been provided to the Department at the time of the original medical treatment.

19. Splaine then ordered Ballinger to have his neurologist answer several questions about Ballinger's ability to perform his job. Ballinger did so and provided a letter from his

neurologist stating that he was capable of performing the duties of a court prosecutor.

20. After Ballinger provided this letter, Splaine eliminated the court prosecutor assignment.

21. The Department initially required Ballinger to use his accrued sick time while he has been out of work rather than use injured-in-the-line-of-duty benefits, even though the forced leave is due to his original injury that was sustained while on duty.

22. Eventually, the Town initiated an involuntary retirement application for Ballinger based on his disability, even though he was capable for performing the duties of a court prosecutor and had been doing so for a number of years.

23. Sometime later, Defendant Fennessy disclosed Ballinger's medical records to the Board of Selectmen without any legitimate business/governmental reason. The Board of Selectmen do not have any role in processing the involuntary retirement application.

24. As a result of the Defendants' unlawful actions, Ballinger has lost income and suffered extreme emotional distress. He has become irritable, withdrawn, unsocial, and has experienced severe professional humiliation.

## Administrative Exhaustion

25. On July 7, 2017, Ballinger filed a charge of discrimination with the Massachusetts Commission Against Discrimination against Kingston and Chief Splaine. Under M.G.L. c. 151B, § 9 and 42 U.S.C. § 12117(a), he has withdrawn the charge to pursue this civil action.

## COUNT I
### (Chapter 151B Disability Discrimination -- Kingston and Splaine)

The actions as set forth above, including, *inter alia*, placing Ballinger on administrative leave and then causing his involuntary retirement, constitutes a violation of M.G.L. c. 151B, causing damages. This claim is brought under M.G.L. c. 151B, § 4(16) against the Town of Kingston and under M.G.L. c. 151B, §§ 4(4A) and 4(4) against Splaine.

## COUNT II
### (ADA Disability Discrimination -- Kingston)

The actions as set forth above, including, *inter alia*, placing Ballinger on administrative leave and then causing his involuntary retirement, constitutes a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, causing damages.

## COUNT III
### (Chapter 151B Failure To Accommodate Disability -- Kingston and Splaine)

The actions as set forth above, including, *inter alia*, refusing to accommodate Ballinger's disability with a reasonable accommodation, constitutes a violation of M.G.L. c. 151B, causing damages. This claim is brought under M.G.L. c. 151B, § 4(16) against the Town of Kingston and under M.G.L. c. 151B, §§ 4(4A) and 4(4) against Splaine.

## COUNT IV
### (ADA Failure To Accommodate Disability -- Kingston)

The actions as set forth above, including, *inter alia*, refusing to accommodate Ballinger's disability with a reasonable accommodation, constitutes a violation of the ADA, 42 U.S.C. § 12101, *et seq.*, causing damages.

## COUNT V
### (Invasion of Privacy -- Fennessy)

The actions as set forth above, including, *inter alia*, disclosing Ballinger's medical records to the Board of Selectmen for the Town of Kingston, constitutes a violation of M.G.L. c. 214, § 1B, causing damages.

## COUNT VI
### (Tortious Interference -- Splaine)

The actions as set forth above, including, *inter alia*, placing Ballinger on paid administrative leave because of his testimony at a union hearing, constitutes tortious interference, where such action was taken with improper motive or means, causing damages.

WHEREFORE, the Plaintiffs pray that this Court:

1. ORDER the Defendants to pay the Plaintiff compensatory damages for lost wages, front pay, and emotional distress;

2. ORDER the Defendants to pay punitive damages and Plaintiff's attorneys' fees and costs as allowed by law; and

3. Any further relief as is just and necessary.

Respectfully submitted,
Tim Ballinger,
By his attorneys,

Joseph L. Sulman, BBO #663635
Elijah Bresley, BBO #691092
Law Office of Joseph L. Sulman
391 Totten Pond, Suite 402
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com
ebresley@sulmanlaw.com

April 25, 2018 (date of service)

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place, Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

---

MCAD DOCKET NUMBER: 17BEM01682         EEOC/HUD CHARGE NUMBER: 16C-2017-01759
FILING DATE: 07/07/17                  VIOLATION DATE: 03/14/17

---

Name of Aggrieved Person or Organization:
Tim Ballinger
96 Wapping Rd
Kingston, MA 02364
Primary Phone: (781)291-1870 ext. ____

---

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Kingston Police Department
attn: Human Resources Department
244 Main St
Kingston, MA 02364
Primary Phone: (781)585-0523 ext. ____

Maurice J. Splaine
Kingston Police Department
244 Main St
Kingston, MA 02364
Primary Phone: (508)573-5312 ext. ____

No. of Employees:     25+

Work Location:

---

Cause of Discrimination based on:
Disability, post-traumatic stress disorder.

---

**The particulars are:**
I, Tim Ballinger, the Complainant believe that I was discriminated against by Kingston Police Department, Maurice J. Splaine, on the basis of Disability. This is in violation of M.G.L. c. 151B Section 4 Paragraph 16 and ADA.

see attached

---

I hereby verify, under the pains and penalties of perjury, that I have read this complaint and the allegations contained herein are true to the best of my knowledge.

(Signature of Complainant)

MCAD Docket Number 17BEM01682, Complaint

LAW OFFICE OF JOSEPH L. SULMAN, ESQ.
391 TOTTEN POND ROAD, SUITE 402
WALTHAM, MASSACHUSETTS 02451

**PLEASE NOTE OUR NEW ADDRESS**

TEL. 617-521-8600
FAX. 866-514-4839
rtatem@sulmanlaw.com

RECEIVED JUL 7 2017

July 5, 2017

Massachusetts Commission Against Discrimination
ATTN: Complaint Intake
One Ashburton Place, Room 601
Boston, MA 02108

RE: Charge of Discrimination: *Tim Ballinger v. Kingston Police Department and Maurice J. Splaine, Chief of Police*

Dear Sir/Madam:

Enclosed for filing please find a signed Charge of Discrimination by my client Tim Ballinger against Kingston Police Department and Maurice J. Splaine, Chief of Police. Please forward the complaint to the Equal Employment Opportunity Commission per the Commission's usual practice.

Thank you for your attention to this matter, and please do not hesitate to contact me if you have any questions regarding the above.

Very truly yours,

Rebecca C. E. Tatem, Esq.

Enclosure

# CHARGE OF DISCRIMINATION

ENTER CHARGE NUMBER

This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.

☐ FEPA
☐ EEOC

RECEIVED JUL - 7 2017

_Massachusetts Commission Against Discrimination_ and EEOC
State or Local Agency, if any

NAME (Indicate Mr., Ms., Mrs.,)
**Tim Ballinger**

Phone:
781-291-1870

STREET ADDRESS    CITY, STATE AND ZIP    DATE OF BIRTH
CODE
**96 Wapping Rd, Kingston MA 02364**

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

NAME    NUMBER OF EMPLOYEES, MEMBERS    TELEPHONE (Indicate Area Code)

**Kingston Police Department**    About 25    (781) 585-0523

STREET ADDRESS    CITY, STATE AND ZIP CODE    COUNTY
**244 Main St, Kingston, MA 0236**    Plymouth

NAME    TELEPHONE (Indicate Area Code)
**Maurice J. Splaine, Chief of Police**    508-573-5312

STREET ADDRESS    CITY, STATE AND ZIP CODE    COUNTY
**Same as above**

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))    DATE DISCRIMINATION TOOK PLACE
EARLIEST **March 14, 2017**    LATEST

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN    X CONTINUING ACTION

☐ RETALIATION  ☐ AGE  X DISABILITY  ☐ OTHER (Specify)

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Complainant alleges discrimination on the basis of disability (PTSD). The particulars are as follows:

1. Complainant Tim Ballinger has been employed with the Respondent Kingston Police Department ("Department") as a police officer since 1998. In 2004, he was promoted to sergeant.

4

### i. Background

2. In August 2006, Sgt. Ballinger was injured on duty. As a result, he was out of work off and on for two years. He returned to work full time around 2008 with a diagnosis of post-traumatic stress disorder, which was disclosed to the Department in numerous medical documents at the time of his return.
3. Respondent Maurice Splaine, Chief of Police for the Department, was a lieutenant at the time of Sgt. Ballinger's injury.
4. In his role as lieutenant, Splaine was responsible for ensuring that Sgt. Ballinger's injury was covered through the state workers' compensation program for public safety officers, known as injured-in-the-line-of-duty benefits, which is codified as M.G.L. c. 41, § 111F.
5. Sgt. Ballinger continued to work for the Department after his return to work with minor accommodations. He was placed in the detective unit upon his return from medical leave and has served as the Department's court prosecutor for the last several years.

### ii. Discriminatory Events.

6. On February 17, 2017, Sgt. Ballinger testified at a hearing regarding potential discipline of another superior officer of the Department. This superior officer had also been previously diagnosed with PTSD and disclosed the diagnosis to Chief Splaine recently.
7. Sgt. Ballinger testified that he had ever been injured in the line of duty and that he had PTSD as a result. He did not testify about any symptoms or any limitations associated with the injury.
8. On March 8, 2017, Sgt. Ballinger received a letter from Lt. Thomas Kelley, the lieutenant in charge of administration, ordering him to attend an interview the following day. The interview ended up being about Sgt. Ballinger's PTSD. About five days later, Sgt. Ballinger arrived at work and was told that Chief Splaine found he was he was psychologically unfit to work. He was ordered to hand in his service weapon and badge and was placed on paid administrative leave for ten days. After the ten days, he was forced to his accrued sick time for the remainder of his leave.
9. Sgt. Ballinger has not been allowed to return to regular duty since March 14, 2017.

10. Soon after removing Sgt. Ballinger from regular duty, Chief Splaine ordered Sgt. Ballinger to provide all of his medical records regarding his prior injury and treatment to the Department, even though the records had already been provided to the Department at the time of the original medical treatment.
11. Chief Splaine then ordered Sgt. Ballinger to have his neurologist answer several questions about his ability to perform his job. Sgt. Ballinger did so and provided a letter from his neurologist stating that he was capable of performing the duties of a court prosecutor.
12. After Sgt. Ballinger's provided this letter, Chief Splaine eliminated the position of court prosecutor.
13. The Department has required Sgt. Ballinger to use his accrued sick time while he has been out of work rather than use injured in the line of duty benefits, even though the forced leave is due to his original injury which was sustained while on duty.
14. As a result of Chief Splaine's and the Department's unlawful actions, Sgt. Ballinger has lost income and suffered extreme emotional distress. His stress has increased substantially, he has become irritable, withdrawn, unsocial, and experienced severe professional humiliation.

I want this charge filed with both the EEOC and the State or Local Agency, if any, I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

Date: 06-30-17

Charging Party (Signature)

EEOC FORM 5 (REV. 3/01)

## U.S. Equal Employment Opportunity Commission

Boston Area Office  
JFK Federal Building, Room 475  
Boston, MA 02203  
Phone: (617) 565-3200  
TDD: (617) 565-3204  
Fax: (617) 565-3196

EEOC Charge No: 16C-2017-01759

NOTICE

This office has been sent a copy of the Complaint of employment discrimination you filed with the Massachusetts Commission Against Discrimination (MCAD), and in order to preserve your federal rights the above referenced charge number has been assigned.

YOUR FEDERAL RIGHTS AND EEOC PROCEDURAL REGULATIONS

( ) Title VII of the Civil Rights Act of 1964, as amended (Title VII)-
If you wish to file a private lawsuit in Federal District Court with your own private attorney, prior to the MCAD's completion of its investigation, you may do so by requesting a NOTICE OF RIGHT TO SUE from the EEOC. Once this request for you to file a private lawsuit is granted, your EEOC charge and possibly the MCAD complaint will be closed. When you receive the NOTICE OF RIGHT TO SUE, it is only valid for ninety (90) days.

( ) The age discrimination in employment act of 1967, as amended (ADEA)-
If you filed your complaint within 300 days of the alleged act of discrimination you can file a private lawsuit under the ADEA any time 60 days after the date you filed your complaint, or within 90 days of your receipt of notice that the EEOC has completed action on your complaint.

( ) The Americans with Disabilities Act of 1990 - Same as Title VII.

The Massachusetts Commission Against Discrimination will investigate and resolve your complaint. If you have any questions regarding the status of your complaint, contact the MCAD location where you filed the complaint. If you want EEOC to conduct a review of the MCAD's Final Determination and Order, you must make this request in writing to the above address within 15 days of the MCAD's final determination, otherwise, we will accept the MCAD's final action as our own. EEOC's regulations require that you inform us and the state agency, in writing, of any change in or prolonged absence from your current address.

If you do not wish to file a private lawsuit on your own, and wish the Massachusetts Commission Against Discrimination to continue with its investigation of your complaint, there is no need for you to take any action now. The MCAD will in the near future inform you of their findings.

EEOC Charge Number 16C-2017-01759, EEOC Transmittal Letter to Complainant