UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 18-11187

TIM BALLINGER,

        Plaintiff,

v.

TOWN OF KINGSTON, MAURICE J.
SPLAINE, and ROBERT H. FENNESSY,

        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendants Town of Kingston (the "Town" or "Kingston"), Chief of Police Maurice J. Splaine ("Chief Splaine") and Robert H. Fennessy ("Mr. Fennessy") (collectively, hereinafter, "Defendants") submit this Memorandum of Law in support of their Motion for Summary Judgment as to all of the Plaintiff's claims.

This litigation arises out of the involuntary disability retirement of Plaintiff Tim Ballinger ("Plaintiff" or "Ballinger") from the Town of Kingston Police Department in March of 2018. Plaintiff alleges seven (7) different claims against Defendants. In Counts I and III, Plaintiff alleges disability discrimination and failure to accommodate under M.G.L. 151B against both Defendant Town of Kingston and Defendant Chief Splaine. Judgment should enter in favor of all Defendants on Counts I and III as a matter of law, as they are not supported by the record evidence. Plaintiff alleges, in Counts II and IV, disability discrimination and failure to accommodate under the American with

1

Disabilities Act, solely against the Town. Judgment should enter in favor of all Defendant Town of Kingston on Counts II and IV as a matter of law, as they are not supported by the record evidence. Plaintiff further alleges an invasion of privacy, Count V, solely against Mr. Fennessey. Judgment should enter in favor of Defendant Fennessy on Count V as a matter of law, as it is not supported by the record evidence. Plaintiff alleges Counts VI and VII, tortious interference and a 42 U.S.C. § 1983 First Amendment retaliation claims, solely against Chief Splaine. Judgment should enter in favor of Defendant Chief Splaine on Counts VI and VII as a matter of law, as they are not supported by the record evidence.

Defendants maintain they acted lawfully and reasonably in relation to Ballinger's employment with the Kingston Police Department at all times. As applied to Plaintiff's discrimination and failure to accommodate claims, Defendants deny there remain any genuine issues of material fact by which Plaintiff could show he is a qualified handicapped person, as required under applicable state and federal law, nor that he suffered any adverse employment action as a result of his disability. Defendants argue there is ample record evidence to prove Defendants had well-documented, legitimate, non-discriminatory reasons for each action taken relative to Plaintiff's employment, which Plaintiff counters with nothing but unsupported, conclusory allegations. Furthermore, Defendant Fennessy at all times acted reasonably in making legitimate business/government decisions regarding reporting Plaintiff's retirement to the Board of Selectmen, (essentially Ballinger's employer), and Defendant Chief Splaine at all times acted reasonably in making employment decisions regarding Plaintiff. Defendant Chief Splaine's decisions are also protected under 42 USC 1983's qualified immunity

provisions. Accordingly, based on the undisputed facts in the record and all applicable law, summary judgment should enter for all Defendants and all claims against them.

## II.     FACTS

The facts relevant to Defendants' Motion for Summary Judgment are set forth in their Local Rule 56.1 Concise Statement of Undisputed Material Facts submitted and filed herewith.

## III.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure allows a party to move for summary judgment in the party's favor upon all or any part of the action. Fed. R. Civ. P. 56(a). The Court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*.  A factual dispute is "genuine" if it can be resolved in favor of either party, and such a dispute is "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 331 (1986).

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e), summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial."

*Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004), citing *Wynne v. Tufts Univ. Sch. of Med .*, 976 F.2d 791, 794 (1st Cir.1992).

In order for a court to grant summary judgment, it must determine: (1) whether there are any material facts at issue in the dispute; (2) whether those issues have been adequately presented to the court so as to be considered as genuine issues, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986), and (3) whether the moving party is entitled to judgment as a matter of law. *Román Figueroa v. Torres Molina*, 754 F.Supp. 239, 240–41 (D .P.R.19).

However, if a factual issue, disputed or not, is not relevant to the resolution of a controlling legal issue raised by a motion for summary judgment, it is not considered material within the meaning of Rule 56(c) and summary judgment can still be granted. *U.S. Fire Ins. Corp. v. Productions Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir.1987); *Boston Five Cents Sav. Bank v. Dept. of Housing*, 758 F.2d 1, 4 (1st Cir.1985); *U.S. Sumitomo Shoji New York, Inc.*, 814 F.2d 798, 804 (1st Cir.1987).

Finally, when the moving party demonstrates that the non-moving party has no reasonable expectation of proving an essential element of its case case, summary judgment properly may be granted. See *Colley v. Benson, Young & Downs Ins. Agency, Inc.*, 42 Mass. App. Ct. 527, 529 (1997). "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." *Lyon v. Morphew*, 424 Mass. 828, 831, 678 N.E.2d 1306 (1997), quoting from *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711, 575 N.E.2d 734 (1991). *Alba v. Sampson*, 44 Mass. App. Ct. 311, 312 (1998).

IV.    **ARGUMENT**
   **A. Counts I-IV Fail as Plaintiff Cannot Prove He Was a Qualified**
      **Handicapped Person**

Counts I through IV of Plaintiff's Complaint allege disability discrimination and

failure to accommodate under Massachusetts law, G.L. c. 151B, and in violation of 42

U.S.C. 12101, the Americans with Disabilities Act ("ADA"). Plaintiff brings Counts I

and III, the 1515B claims, against both Defendant Town of Kingston and Defendant

Chief Splaine. Plaintiff brings his ADA claims, Counts II and IV, solely against

Defendant Town of Kingston. The same legal analysis, however, applies to Counts I

through IV. The First Circuit of the United States Court of Appeals has noted the

Massachusetts law against employment discrimination, G.L. c. 151B, "tracks the ADA in

virtually all respects." *Mulloy v. Acushnet Co.*, 460 F.3d 141 (1st Cir. 2006). Because of

the similarities between the ADA and 151B, "the Supreme Judicial Court of

Massachusetts had indicated that federal case law construing the ADA should be

followed in interpreting the Massachusetts disability law." *Id.* Accordingly, despite

Plaintiff's multiple counts, the nearly identical claims will be evaluated by the same legal

standard, both under the ADA and 151B.

   *The ADA.* To establish a prima facie case of employment discrimination on the

basis of disability or handicap, Plaintiff must prove the following three (3) elements: 1)

that he is a disabled individual within the meaning of the ADA, i.e. that he has "a

physical or mental impairment that substantially limits one or more [] major life

activities," 42 U.S.C. Sec. 12102(2); 2) with or without reasonable accommodation he is

a qualified individual capable of performing the essential functions of the job; and 3) that

he suffered an adverse action because of his disability. *Mulloy*, 460 F. 3d at 145-146,

citing *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000); See also *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002).

*M.G.L. c. 151B.* The standard under 151B is identical. "To establish a prima facie case of employment discrimination on the basis of handicap under G. L. c. 151B, § 4 (16), the plaintiff must show that he is "handicapped" within the meaning of the statute; that he is a "qualified handicapped person" capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and that he was subject to an adverse employment action because of his handicap." *Godfrey v. Globe Newspaper Co., Inc.*, 457 Mass. 113, 120 (2010).

Given the liberal standard in defining "disability," Defendants do not contest the first element of Plaintiff's prime facie case in Counts I through IV. However, Plaintiff has failed to present sufficient evidence to establish that he is a qualified handicapped person or that Plaintiff suffered an adverse employment action as a result of his disability; thus, Plaintiff has no reasonable likelihood of establishing his prime facie case.

   i. Plaintiff is Not a Qualified Handicapped Person Capable of Performing His Essential Job Functions as a Police Sergeant

Here, no party contests Plaintiff's handicap. The issue ripe for summary judgment is Plaintiff's inability to perform the essential functions of his job with or without a reasonable accommodation. As detailed below, there is no need to assess whether Plaintiff suffered an adverse employment action because of Plaintiff's inability to perform the essential functions of his job.

To show is he a "qualified handicapped person", Ballinger must show that he (1) has the requisite skill, experience, education and other job-related requirements for the position and (2) that he is capable of performing the essential functions of the position

with or without reasonable accommodation." *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006). To determine the essential functions or duties of a job under the ADA, as well as under 151B, the Court must look to the (i) employer's judgment; (ii) job description; and (iii) work experience of past incumbents and current incumbents. *Id*. In the essential functions inquiry, "[t]he fact that certain tasks associated with a particular position can be either reduced, reassigned, or reallocated . . . does not, by itself, render them non-essential to the position they were associated to in the first place." *Jones v. Walgreen Co.*, 679 F.3d 9, 17 (1st Cir. 2012). Furthermore, even though a function may rarely occur, it does not render that function nonessential to the position in question. See *Cox v. New England Tel. & Tel. Co.*, 414 Mass.375, 387 (affirming Superior Court decision finding that even though a function rarely occurred it "is not unforeseeable that this skill would be necessary during an emergency, or even from time to time").

The Massachusetts Supreme Judicial Court has looked to the job standards set out by the Commonwealth of Massachusetts Human Resources Division for police and fire fighters as these are likely to ensure the safety of other officers and fire fighters as well as the public. See *Carleton v. Commonwealth*, 447 Mass. 791 (2006). "The Carleton case applies to situations where the medical and occupational experts in the relevant field have made a determination [] in light of the risks posed to public safety." *McKenna v. Boston Housing Authority*, (2008), 30 MDLR 27. The plaintiff in Carleton was unable to pass a hearing test with or without his hearing aids and was deemed unfit for duty and denied employment because of the standards promulgated by the Commonwealth of Massachusetts Human Resources Division. 447 Mass. 791, 809 (2006). He sued the City, the Commonwealth and the personnel administrator of the division alleging, inter alia,

handicap discrimination under M.G.L.c. 151B, §4(16). In granting summary judgment in favor of the City in *Carleton* the court stated:

> In an area where public safety is paramount, we do not read § 4(16) to preclude a determination by the division (rather than by a judge or a jury) that an accommodation is not reasonable because it would impose an undue hardship on the conduct of the employer's (in this case the public's) business due to the dangerous type of work involved and the nature of the risk to public safety that would arise if the accommodation failed [] at a critical moment in the work. This is particularly so where such a determination is based on consultations with medical and occupational experts in the field; is not the product of prejudice, stereotypes, or unfounded fear; and is ratified by the Legislature.

*Carleton v. Commonwealth*, 447 Mass. 791, 809-10 (2006).   Additionally, the court explained that because Carleton has no reasonable expectation of proving that he is a qualified handicapped person, summary judgment was therefore properly granted. *Id*. at 810-11.

In order for the court to have denied summary judgment for the defendants, they would have to find that there were facts in dispute as to whether the employee was a qualified handicapped person capable of performing the essential duties of their job without posing an unacceptably significant risk of serious injury to themselves or others. *Gannon v. City of Boston*, 476 Mass. 786, 87 (2017). The *Carleton* Court further noted that in the area of public safety, standards regarding reasonable accommodations for handicapped employees may be instituted by the Commonwealth's Division of Human Resources, and ultimately concluded a candidate for firefighter unable "to meet health and fitness requirements by operation of a standard which rendered a certain accommodation unreasonable, had no expectation of proving that he was a qualified handicapped person within the meaning of…" G. L., c. 151B. *McLaughlin v. City of*

*Lowell*, 84 Mass. App. Ct. 45 (2013) (explaining that here are instances as in *Carleton* that determining what constitutes an essential duty of the job or position may fall outside the province of a judge or jury); See also *Everett v. 357 Corp.*, 453 Mass. 585, 610 (2009) (where Plaintiff sought reinstatement to his position did not meet burden of demonstrating he was qualified handicapped person within the meaning of G. L. c. 151B because he did not comply with Federal Department of Transportation (DOT) regulations requiring a commercial truck driver to have a certificate, based on a medical examination, attesting to his physical and mental fitness to drive and a doctor's conclusion he was not "healthy to drive" rendered him presumptively unqualified).

As in *Carleton*, this case deals with the essential functions of a public safety position which are set forth by the Commonwealth of Massachusetts Human Resources Division. After three (3) medical examinations, Ballinger was found to be unable to perform the essential functions of the position of a police sergeant.

The Town of Kingston relied on the list of essential functions issued by the Commonwealth of Massachusetts Human Resources Division and the medical opinions of three (3) doctors in determining to submit Ballinger for involuntary disability retirement. As testified to by the Chief in his deposition in this matter, these are the essential functions the Kingston Police Department relies on and that a police sergeant must be able to perform to fulfill the duties of a police sergeant in the Town of Kingston.

Once Plaintiff was put in for disability retirement, upon submission of an application for involuntary disability, the decision was in the hands of the Plymouth County Retirement Board, a legal entity separate and apart from the Town of Kingston. Pursuant to the panel appointed by the State Public Employment Retirement

Administration Commission (PERAC) to evaluate Ballinger on his accidental disability application, Ballinger was deemed to be permanently unable to perform the essential functions of his position by three (3) out of three (3) independent physicians on the panel. An entire separate government entity agreed with the finding that Ballinger could not perform the essential duties of a police sergeant.

While Ballinger claims he has been able to do the work of the court prosecutor specialty assignment, this is not a determining factor in whether this is an essential function of the job of police sergeant. Ballinger's duties were not limited to court appearances, and all police officers need to be ready to respond in emergency situations. Ballinger worked overtime patrol shifts and detail shifts, including every Friday night at a large shopping mall. Even driving to and from the courthouse, emergency situations can arise in which pursuit driving would be required and Ballinger would have a duty to act.

There is no genuine issue of fact regarding Ballinger's ability to meet the job-related requirements and perform the essential duties of a police sergeant even with reasonable accommodation. All doctors who evaluated Ballinger expressed concern over his inability to respond safely and effectively in all situations required of a police sergeant, which was further analyzed and supported by the decision of the Retirement Board. *Carleton*, and other cases before the Massachusetts Supreme Judicial Court, have given substantial weight to the medical experts as well as the medical standards set forth for officers and fire fighters by HRD.

ii.    Failure to Accommodate

In order to prevail at the summary judgment  stage on a typical claim of failure to accommodate, a plaintiff must present sufficient evidence indicating "that (a) she is

disabled within the ADA's definition; that (b) she could perform the job's essential functions either with or without a reasonable accommodation; and that (c) the employer knew of her disability, yet failed to accommodate it." *Lang v. Wal-Mart Stores, East, L.P.*, 813 F.3d 447, 454 (1st Cir. 2016). The burden for the employee at second step of inquiry changes slightly when an employee becomes disabled, can no longer perform the essential functions of her job, and requests as an accommodation a transfer or complete reassignment of duties. Instead of addressing the essential functions of her current position, an employee must demonstrate that she can perform the essential functions of the position she desires, and must demonstrate that there is an actual vacant position to which she can transfer.

Here, Plaintiff has failed to offer any evidence suggesting that he requested an accommodation, which is his initial duty. Second, Plaintiff has "offered no evidence that there were any [available accommodations][], and it was [his] burden to show as much." *Lang*, 813 F.3d at 456. Thus, summary judgment on Plaintiff's ADA and 151B handicap discrimination claims is warranted.

Assuming *arguendo*, Ballinger did request an accommodation, not all accommodations are reasonable. In *Maldonado v. Municipality of Ponce*, 206 F. Supp. 2d 198 (2002), the employee was a police officer, who injured his lower back. He applied for a reasonable accommodation, requesting a position in which he did not have to be either standing or seating for a long time. The court found that the employee could not perform the essential duties of his job with or without reasonable accommodation, and thus was not a qualified individual under the ADA. The essential functions of the employee's job included to patrol, guard municipal and private properties, and/or perform

11

arrests, among other duties. Given the limitations to the employee's physical capacity established in the final medical evaluation submitted by his doctor, for example, that he could walk and stand up only for 30 consecutive minutes, had to be allowed to take 4-5 minutes periods of rest every hour, and could not lift objects heavier than 10 pounds, the court was unable to conclude that the employee was able to perform his essential duties. The employee argued that the employer could have reasonably accommodated him in a light-duty position within the police force, *but failed to show how he would have been able to perform the essential functions of that job*. As he failed to prove the second element of a failure to accommodate claim, that he could perform the essential functions of his job, the court granted summary judgment for the defendant, without regard to the availability of an accommodation. *Id*. Furthermore, "[t]he decisional law also settles firmly the points (a) that an indefinite leave of absence cannot serve as a reasonable accommodation, (b) that a reasonable accommodation does not extend to transfer of the employee to an alternate position or to a vacant position, and (c) that a reasonable accommodation does not require creation of a new position for the employee." *Nicholls v. Boston Transp. Dep't*, No. 13-P-293, 2014 Mass. App. Unpub. LEXIS 244, at *4, 85 Mass. App. Ct. 1102, 3 N.E.3d 1119, 2014 WL 738202 (Mass. App. Ct. February 27, 2014).

Here, Plaintiff's disability discrimination claim fails as a matter of law because Plaintiff cannot perform the essential functions of a police sergeant with or without an accommodation. To this point, Plaintiff alleges that his position as a court prosecutor was a reasonable accommodation and that he is able to perform his job as a police sergeant with this accommodation. However, the applicable case law holds that an alternative

position other than the position plaintiff was hired to perform does not constitute an accommodation. *See Nicholls, supra* at * 4; *see also Beane v. Mass. Container Corp.*, No. 02-2339, 2004 Mass. Super. LEXIS 422, *15-16, 18 Mass. L. Rep. 388 (Mass. Super. September 8, 2004) (holding M.G.L. c. 151B limits its application to the position plaintiff was hired to perform, Defendant is not required to offer Plaintiff a different position, and a request to work an alternative position is not a request for a reasonable accommodation). Therefore, Plaintiff's specialty assignment as a court prosecutor cannot be considered a reasonable accommodation as he must be capable of doing all functions of a police sergeant at all times.  Consequently, Plaintiff is not capable of performing the essential functions of his job with an accommodation.

It is further noteworthy to add Chief Splaine seriously questioned Plaintiff's ability to perform even the essential functions of a court prosecutor as Plaintiff openly admitted he did not know police policies and procedures, lost his composure on the stand, openly admitted to lacking the ability to remember simple facts, and overall did not professionally represent the Kingston Police Department in his February 17, 2017 testimony.

Plaintiff's claim for failure to accommodate fails as a matter of law because the court prosecutor position cannot be considered an accommodation under Massachusetts law. In addition, Plaintiff's failure to accommodate claim fails as a matter of law because the complaint is devoid of any allegations illustrating that Plaintiff requested a reasonable accommodation from the Town and/or Chief Splaine.

The Town of Kingston, or Chief Splaine, had no duty to seek a reasonable accommodation or engage in the interactive process where no reasonable accommodation

existed or was requested. When exploring a reasonable accommodation, the employer does not have to create a new position. *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002).

Additionally, Plaintiff's disability discrimination claim fails as a matter of law because he cannot perform the essential functions of a police sergeant. A failure to accommodate claim must first begin with an assessment of Plaintiff's status as a qualified handicapped person. Here, as Plaintiff alleges, he is able to perform only the essential functions of a court prosecutor, not a police sergeant. (Compl. pg. 4, ¶ 19). The case law is clear:  in order to state a claim for disability discrimination Plaintiff must show that he is capable of performing the essential functions of the position he was hired to perform. *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002).  Here, Plaintiff was not hired to be a court prosecutor, he was hired to be a police sergeant.

Wherefore, favorable judgment should enter on Counts I through IV as Plaintiff cannot prove the second element of his disability discrimination claim, of showing he is a qualified handicapped individual.

**B.  Count V Fails as Defendant Fennessy Acted Reasonably At All Times and Plaintiff Cannot Prove the Elements of Invasion of Privacy**

"General Laws c. 214, § 1B, creates a statutory right against "unreasonable, substantial or serious" interference with a person's privacy." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 (2005).  "[The Supreme Judicial Court has] stated that, "despite the disjunctive "or," the phrase "unreasonable, substantial or serious" is inclusive, as § 1B obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified." *Id.*  Consequently, "[t]o recover under the statute for dissemination of private information, a plaintiff *must establish* that the

disclosure was both *unreasonable* and either *substantial or serious*." *Id.*  Moreover, "[t]o determine whether the inquiry amounts to a violation of c. 214, § 1B . . .  the employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy." *O'Connor v. Police Comm'r of Boston*, 408 Mass. 324, 330 (1990).

Plaintiff alleges that Defendant Fennessy, the former Town Administrator for the Town of Kingston, violated his privacy pursuant to M.G.L. c. 214 § 1B, when he disclosed Plaintiff's medical records to the Kingston Board of Selectmen. (*Compl.* at pg. 4, ¶ 22). Here, Plaintiff's claim fails as a matter of law because Plaintiff has failed to proffer any record evidence to show that the disclosure of his medical records was unreasonable and either substantial or serious. Here, Plaintiff's employer is the Town of Kingston, which is run by the Board of Selectmen. Consequently, the Board of Selectmen have a valid interest in Plaintiff's health as it relates to the performance of his job.  *See Bratt v. International Business Machines Corp.,* 392 Mass. 508, 524 (1984) (Stating "an employer may have a substantial and valid interest in aspects of an employee's health that could affect the employee's ability to effectively  perform job duties."). Moreover, "the public has an important interest in having a police force comprised of competent and able individuals." *Mulgrew v. Taunton,* 410 Mass. 631, 637 (1991). Therefore, disclosures relating to a Plaintiff's fitness for duty as a police officer do not violate M.G.L. c. 214 § 1B. *Id.*

In addition, prior to the dissemination of the medical records, the Town was already in possession of Plaintiff's medical records relating to his 2006 injury because he applied for 111F benefits. (*Complaint.* pg. 2, ¶ ¶ 6-7; pg. 3, ¶ ¶ 18). Therefore, the Board

of Selectmen had already been apprised of Plaintiff's medical condition. Most significantly, Plaintiff repeatedly testified in his deposition that he signed a form allowing the town constant access to his medical records and subsequent updates. Accordingly, the alleged dissemination by Defendant Fennessy cannot be viewed as substantial or serious as the Board of Selectmen already had access to this material.

Wherefore, summary judgment should enter in favor of Defendant Fennessy on Count V, invasion of privacy, as Plaintiff cannot prove Fennessy acted unreasobably, nor that it was a serious intrusion, nor that an intrusion took place at all.

### C. Count VI Fails as Defendant Chief Splaine Acted Reasonably At All Times and Plaintiff Cannot Prove Improper Motive

To prevail on their tortious interference claim, Plaintiff must prove that "(1) [he] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship; (2) [Defendant] knowingly induced a breaking of the relationship; (3) [Defendant's] interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the [Plaintiff was] harmed by [Defendant's] actions." *NPS, LLC v. StubHub, Inc.*, No. 06-4874-BLS1, 2009 Mass. Super. LEXIS 97, *14, 25 Mass. L. Rep. 478 (Mass. Super. January 22, 2009) (citing *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007)). Moreover, "[t]he harm must result in economic loss; where the plaintiff does not suffer any pecuniary loss as a result of the defendant's actions, there can be no recovery on a tortious interference claim." *NPS, LLC v. StubHub, Inc.*, No. 06-4874-BLS1, 2009 Mass. Super. LEXIS 97, *14, 25 Mass. L. Rep. 478 (Mass. Super. January 22, 2009).

Plaintiff alleges that he was subject to tortious interference when Chief Splaine placed him on paid administrative leave.[1] (*Complaint*. pg. 5, Count VI).  Plaintiff's claim fails as a matter of law because Chief Splaine did not interfere with Plaintiff's employment relationship with the Town. Chief Splaine acted in accordance with the relevant Collective Bargaining Agreement, and as such, did not knowingly induce a breaking of Plaintiff's alleged contractual relationship with any third-party. Additionally, Plaintiff cannot prove that he suffered an economic loss because he was placed on *paid* administrative leave.

Plaintiff's tortious interference claim also fails on the second element of the claim. Plaintiff has failed to allege facts illustrating that Chief Splaine acted with an improper motive. To be reasonable, an inference of malice must be based upon probabilities rather than mere possibilities. See *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. at 664. An employee must demonstrate that spite or malevolence, i.e., a purpose unrelated to any legitimate corporate interest, was the controlling factor in urging the plaintiff's discharge. *Boothby v. Texon, Inc.*, 414 Mass. 468, 487, 608 N.E.2d 1028 (1993). See also *Moriearty, Adkins, & Lipsitz, Employment Law* § 6.46 (1995). The burden was on the plaintiff to establish that Chief Splaine abused his privilege, which he has not done. See *Judd v. McCormack*, 27 Mass. App. Ct. 167, 173, 535 N.E.2d 1284 (1989); *Alba v. Sampson*, 44 Mass. App. Ct. 311, 315 (1998).

Here, as Plaintiff alleges, he testified at a hearing about his PTSD and his lack of knowledge on policies and procedures of the Kingston Police Department. Subsequently,

---

[1] There is perhaps a question of law if plaintiff can even bring a tortious interference claim as an individual alleging a violation of the collective bargaining agreement. See *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998); *Collective Bargaining Reform Ass'n v. Labor rels. Comm'n*, 436 Mass. 197, 208 n.12, 763 N.E.2d 1036 (2001).

Lieutenant Kelley conducted an interview with Plaintiff regarding same. Shortly thereafter, Chief Splaine ordered Plaintiff to have his neurologist provide a letter specifying Plaintiff's ability to perform his job. (Complaint at ¶ 14, pg. 4 ¶ 19). Plaintiff then submitted a letter to Chief Splaine stating that he was capable of performing the duties of a court prosecutor, not a Police Sergeant. (*Id*. at pg. 4 ¶ 19). This was the sole basis for Chief Splaine's action. Here, Plaintiff's complaint is devoid of any factual allegations illustrating that Chief Splaine acted with an improper motive or malice. Therefore, Plaintiff's tortious interference claim fails as a matter of law.

### D. Count VII Fails as Defendant Chief Splaine Acted Reasonably At All Times and Chief Splaine is Immune From Suit

In order to establish a claim for unconstitutional retaliation under the First Amendment, Plaintiff must establish that he was 1) a public employee speaking as a citizen on a matter of public concern; 2) his First Amendment interests in the speech outweigh the government's interests as an employer in avoiding disruption in the workplace and; 3) he must meet the burden of producing sufficient evidence, either direct or circumstantial, that would allow a jury to infer that the speech in question was the motivating factor behind the adverse employment action. *Díaz-Bigio v. Santini*, 652 F.3d 45, 51-52 (1st Cir. 2011). The United States Supreme Court has held that the following two inquiries apply in determining whether a public employee's speech is entitled to First Amendment protection:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. See *Pickering*, supra, at 568, 88. If the answer is no, the employee has no First Amendment cause of action based on the employer's reaction to the speech. See *Connick*, supra, at 147, 103. If the answer is yes, the possibility of a First Amendment claim arises. The question becomes whether the government employer had an adequate justification for treating the employee differently from any other member of the general public. See *Pickering*, supra, at 568.

*Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). As such, "a government entity has broader discretion to restrict speech when it acts in its employer role, but the restrictions it imposes must be directed at speech that has some potential to affect its operations. On the other hand, a citizen who works for the government is nonetheless still a citizen." *Id*. Thus, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id*. "[T]he First Amendment does not prohibit managerial discipline based on an employee's expressions pursuant to official responsibilities." *Id*. Furthermore, in general, a public employee's speech concerning employment issues pursuant to an internal grievance procedure, as was the case here, "will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011).

Ballinger's unconstitutional retaliation claim under the First Amendment stems from Chief Splaine placing Ballinger on paid administrative leave in March 2017, followed by Ballinger's involuntary retirement, which occurred one year later, after he testified on behalf of another officer at a termination hearing on February 17, 2017. Ballinger testified on behalf of another officer, Munford, in regard to a disciplinary action and termination at hearings on her grievances. Clearly, these are not matters of public concern; rather, they are specific to Munford's employment. As such, Ballinger's speech is not entitled to the protection of the First Amendment. Further, whether a matter was of public concern is not the only factor Ballinger must prove to sustain his retaliation claim.

The decision to place Ballinger on leave after such concerning testimony, was a decision that any reasonable employer would have done. Chief Splaine was genuinely concerned as to whether or not Ballinger was able to perform the essential functions of his job in a safe and effective manner. Given the nature of PTSD and the specialized job requirements of a police officer, such as carrying a firearm, Chief Splaine had a duty to the community to ensure that Ballinger was able to continue his position. During his testimony, Ballinger admitted that he did not know several policies and procedures of the Kingston Police Department, he struggled to remember basic information, and he discussed that he had been diagnosed with PTSD as a result of an on-the-job injury. Subsequently, Ballinger was ordered to meet with Lieutenant Kelley to discuss his testimony and did so on March 9, 2017, not refuting any of his testimony. Based on the above, Ballinger was then placed on paid administrative leave on March 14, 2017 and ordered to provide medical documentation as to his ability to perform his job. As several medical providers, including a neurologist, determined Ballinger was unable to perform the essential functions of a Sergeant, an involuntary retirement application was initiated. As such, the Town initiated an involuntary retirement application for Ballinger.

On the record before us, there are no material facts in dispute with regard to whether Ballinger spoke in his capacity as an employee of the Kingston Police Department or as a private citizen. Ballinger learned about the matters that he testified about in the course of performing his job duties. The subjects of his speech are all matters that are directly related to Ballinger's employment.

Ballinger's response that his speech concerned matters of public concern is beside the point, because under the analytical frame-work developed in *Garcetti*, it is not

sufficient that an employee's speech relates to matters of public concern. Under governing Federal law, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. See *Lane* v. *Franks*, 134 S. Ct. 2369, 2373, 189 L. Ed. 2d 312 (2014) (if "speech is made pursuant to the employee's ordinary job duties, then the employee is not speaking as a citizen for First Amendment purposes").

Ballinger has failed to establish that the alleged adverse employment actions were a result of his speech and his proposed First Amendment retaliation claim must fail as a matter of law.

### E. Chief Splaine, the only named Defendant in Count VII, is entitled to qualified immunity under § 1983.

Chief Splaine is entitled to qualified immunity from Ballinger's § 1983 claim. In cases arising under § 1983, qualified immunity will protect a public official from personal liability if he acted in good faith. See *Maiorana v. MacDonald*, 596 F.2d 1072, 1074 (1st Cir. 1979). "[T]he purpose of qualified immunity is not just to protect the defendant from liability, but also from 'standing trial or facing the other burdens of litigation.'" *Wilson v. City of Bos.*, 421 F.3d 45, 52 (1st Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). "[T]he qualified immunity inquiry...allows...for the inevitable reality that 'law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is [constitutional], and...that...those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.'" *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1373 (1st Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). As long as the public official

did not act in violation of the qualified immunity standard, he or she will not be personally liable for any violation of the plaintiff's civil rights.

In the context of a First Amendment Retaliation claim, "public employers need not allege or show that an employee's speech actually disrupted the workplace, and substantial weight has been given 'to government employers' reasonable predictions of disruption.'" *Díaz-Bigio v. Santini*, 652 F.3d 45, 53-54 (1st Cir. 2011) (quoting *Waters v. Churchill*, 511 U.S. 661, 673 (1994); see also *Curran v. Cousins*, 509 F.3d 36, 49 (1st Cir. 2007) ("An employer need not show an actual adverse effect in order to terminate an employee under the Garcetti/Pickering test."). Here, a reasonable individual in Chief Splaine's position would have had concerns regarding Ballinger's ability to perform the essential functions of his job after Ballinger disclosed, during an on-the-job inquiry at a termination hearing, he did not know, or could not remember, several policies and procedures of the Kingston Police Department, and had PTSD. Further, the initial paid administrative leave and subsequent initiation of an involuntary retirement application was not a violation of Ballinger's constitutional rights as it was determined that he was unable to perform the essential functions of his job, and this was a safety concern for members of the Kingston community and Police Department. Chief Splaine acted as any reasonable employer in charge of public safety would have done. Thus, Chief Splaine would be entitled to qualified immunity and the Plaintiff's First Amendment retaliation claim must fail.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request this Honorable Court grant its Motion for Summary Judgment for all claims against all of the Defendants.

Respectfully submitted,


By their attorney,

/s/*Megan K. Baker*_____
Megan K. Baker (BBO #703189)
mbaker@lccplaw.com
Bradford Louison (BBO #305755)
blouison@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305

Date:  May 13, 2019

## **CERTIFICATE OF SERVICE**

I, hereby certify that on the 13th day of May 2019, the foregoing document was served electronically to plaintiff's counsel of record.

/s/*Megan K. Baker*___
Megan K. Baker, Esq.