UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 18-11187

TIM BALLINGER,

        Plaintiff,

v.

TOWN OF KINGSTON, MAURICE J.
SPLAINE, and ROBERT H. FENNESSY,

        Defendants.

**DEFENDANTS', TOWN OF KINGSTON, CHIEF MAURICE J. SPLAINE AND
ROBERT H. FENNESSY, STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT[1]**

Pursuant to Local Rule 56.1, the Defendants, Town of Kingston ("Kingston"), Chief Maurice J. Splaine ("Chief Splaine") and Robert H. Fennessy ("Fennessy"), hereby submit this Statement of Undisputed Material Facts in Support of Motion for Summary Judgment:

1. M.G.L. Chapter 31, Section 61A provides that the Town of Kingston is one of the Civil Service communities in the Commonwealth of Massachusetts. At all relevant times to this Complaint, Kingston hired its police officers pursuant to Civil Service Law, G.L. Chapter 31, and the Personnel Administration Rules administered by the Human Resources Division of the Commonwealth of Massachusetts (HRD). Pursuant to the standards set by HRD, Kingston requires that each police officer hired and employed by Kingston is able to perform essential functions of the position as set forth by HRD. (See **Exhibit A**- Deposition of Chief Splaine, pp. 63-64, 98, 105; **Exhibit B**- Deposition of Chief Splaine, Exhibit 8- "Task Survey Analysis").

2. Police officers for the Town of Kingston Police Department are expected to be able to perform the essential functions listed in the HRD manual at all times while employed by the Town of Kingston. (See **Exhibit A**- Deposition Transcript of Chief Splaine, p. 35).

3. Plaintiff, Tim Ballinger, was employed as a Police Officer for the Town of Kingston for approximately twenty-three (23) years. (See *Plaintiff's Complaint*). Ballinger retired in

---

[1] In so state these undisputed material facts, The Defendants do not concede or rely on these facts for any purpose other than this Motion for Summary Judgment.

March of 2018 after Defendants submitted Ballinger's application for involuntary retirement to the Plymouth County Retirement Board on October 2, 2017. (See **Exhibit C**- Deposition of Chief Splaine, Exhibit 35- "Application for Involuntary Disability Retirement").

4. At the time of his retirement, Ballinger was assigned to the position of "sergeant" at the Kingston Police Department. Ballinger had been assigned to the position of sergeant since in and around 2004. (See **Exhibit D**- Defendants' Position Statement, p. 2).

5. Police Officers for the Town of Kingston can also apply for specialty assignments in addition to their underlying positions. All assignments, including each assignment received by Ballinger, are received from the annual bidding process in accordance with the Collective Bargaining Agreement. (See **Exhibit A**- Deposition of Chief Splaine, pp. 38, 51, 53, 99-100, 154-156).

6. No matter the type of specialty assignment, both under the patrol officer contract and the sergeant contract, an officer can only obtain a specialty assignment if the officer can also perform all the essential job functions of a patrol officer and/or sergeant. (See **Exhibit A**, Deposition of Chief Splaine, pp. 35-37, 41, 98).

7. The "court prosecutor" position is not a job in and of itself; it is one of the specialty assignments for which a police officer (notably either patrol or sergeant) may apply. Furthermore, the position has not been eliminated. The specialty assignment of "court prosecutor" is a negotiated part of the CBA and therefore Chief Splaine would not be able to eliminate it. Chief Splaine did, however, assign the position of police prosecutor to the Criminal Investigation Bureau within the Kingston Police Department, per the CBA, and presently, three people are specially assigned as police prosecutors on a part-time basis. (See **Exhibit D**- Defendants' Position Statement, p. 6; **Exhibit A**- Deposition of Chief Splaine, pp. 38, 156).

8. Ballinger himself testified that he also did detail work, including weekend detail, night detail, and "every Friday night I did mall detail," and covered overtime patrol shifts which require Ballinger to be able to perform the essential job functions of a police sergeant, but also, at times, a patrol officer. (See **Exhibit T**- Deposition of Tim Ballinger, pp. 17, 118-119, 121).

9. In August 2006, Ballinger suffered an on the job injury which caused him to be absent from work for approximately eighteen (18) months. Said injury occurred while Ballinger was on duty, Ballinger was electrocuted and sustained both physical and psychological injuries. Notably, the 2006 medical documents supporting Ballinger's return to work noted "mild PTSD symptoms, improving." (See **Exhibit D**- Defendants' Position Statement, p. 2; **Exhibit E**- Deposition of Chief Splaine, Exhibits #4, #5, "Return to Work Katz report and email").

10. On March 3, 2007, Ballinger was cleared by his medical provider to return to full duty without any restrictions or accommodations. In fact, medical documents from 2012 further indicate Ballinger was fit for duty with no restrictions. (See **Exhibit D**- Defendants' Position Statement, p. 2; **Exhibit E**- Deposition of Chief Splaine, Exhibits #4, #5- "Return to Work Katz Report and email"; **Exhibit F**- Deposition of Chief Splaine, Exhibit #22, "2012 No restrictions doctor report).

11. Ballinger testified at various employment hearings on behalf of another officer, former Police Sergeant Susan Munford, on at least three (3) separate occasions: including June 2016, August 2016, and February 2017, as he was entitled to do. (See **Exhibit A**- Deposition of Chief Splaine, p. 70).

12. Ballinger received a three (3) day suspension on July 13, 2016 for an incident that took place on June 29, 2016 where Ballinger verbally attacked another officer. The suspension was appealed and revoked. The outcome of the appeal is irrelevant, however, as Ballinger admits he behaved inappropriately. The suspension was a result of a thorough, internal investigation which found Ballinger violated multiple policies and procedures of the Kingston Police Department. There was no other reason for this suspension, and nothing in the record evidence suggests neither discriminatory, nor retaliatory motives for the suspension. (See **Exhibit D**- Defendants' Position Statement, p. 3; **Exhibit G**- Deposition of Lt. Kelley, Exhibit #10- "Internal Investigation"; **Exhibit H**- Deposition of Chief Splaine, Exhibit #11- "Suspension Letter"; **Exhibit I**- Deposition of Chief Splaine, Exhibit #12-"Arbitration Decision").

13. On February 17, 2017, Ballinger testified at a termination hearing of Susan Munford on her behalf. During his testimony, Ballinger stated multiple times that he did not know the policies and procedures of the Kingston Police Department, including the procedures of evidence, one of his direct assignments. During this testimony Ballinger also failed to recall a lot of dates and basic information, and the attorney who called Ballinger as a witness stated to the Hearing Officer that Ballinger had memory issues. During this testimony, Ballinger also claimed he has been diagnosed with post-traumatic stress disorder ("PTSD") (See **Exhibit J**- Deposition of Chief Splaine, Exhibit #13, "Transcript," pp. 125, 158, 169-171).

14. Based on the seriousness of the statements made during this testimony, which were particularly alarming as part of Ballinger's job duties were to appear in court on behalf of the Town of Kingston, on March 8, 2017, Chief Splaine orders Ballinger to appear for an interview with Lt. Kelley on March 9, 2017, regarding some of the statements he made during his testimony, including his statement about PTSD. (See **Exhibit D**- Defendants' Position Statement, p. 3; **Exhibit A**- Deposition of Chief Splaine, pp. 58, 94; **Exhibit K**- Deposition of Tim Ballinger, Exhibit #3- "Letter re interview"; **Exhibit L**- Deposition of Lt. Kelley, Exhibit #13- "Interview Transcript").

15. As a result of the interview, where Ballinger reaffirmed his lack of knowledge regarding policies and procedures and re-stated he had PTSD, Chief Splaine concluded Ballinger's ability to perform the essential functions of the job of a police sergeant was in question. Chief Splaine further concluded it necessary to have clarification from a medical provider on Ballinger's ability to perform the essential functions of a police sergeant. (See **Exhibit D**- Defendants' Position Statement, p. 4).

16. Pending this clarification, for the safety of Ballinger, the officers of the Kingston Police Department, and public safety, Chief Splaine placed Ballinger on paid administrative leave. Ballinger was on administrative leave for approximately nine (9) days, and then was placed on sick leave after Ballinger provided initial medical documentation. (See **Exhibit D**- Defendants' Position Statement, p. 4; **Exhibit M**- Deposition of Lt. Kelley, Exhibit #15- "Chief Splaine Letter to Complainant dated March 14, 2017").

17. During this leave, Chief Splaine ordered Ballinger to provide medical documentation regarding his medical condition and whether or not he could perform the essential function of police sergeant. (See **Exhibit A**- Deposition of Chief Splaine, pp.102-106, 108, 112-114).

18. Chief Splaine, under the CBA, has the authority to place officers on leave, order medical evaluations of officers, and request documentation from medical professionals to determine an officer's ability to perform his/her essential job functions. (See **Exhibit D**- Defendants' Position Statement, p. 1 and 5; **Exhibit N**- Deposition of Chief Splaine, Exhibit #2- "CBA," p. 14).

19. Chief Splaine acted within his authority by placing Ballinger on paid administrative leave, and subsequent sick leave, while Plaintiff's fitness for duty was investigated, as is the right and duty of the Chief of Police as provided in the Collective Bargaining Agreement by and between the Town of Kingston and the Superior Police Officers Union Mass C.O.P.S., Local 386, Section 28. (See **Exhibit N**- Deposition of Chief Splaine, Exhibit 2, "Agreement By and Between Town of Kingston and Superior Police Officers Union Mass C.O.P.S., Local 386", pp. 14-15).

20. Initially, Ballinger responded to Chief Splaine's request by providing documentation from Dr. Fry (a psychologist at Cove Counseling). In said documentation, Dr. Fry opined that Ballinger "is currently unable to function with full capacity as a police officer, physically, cognitively and psychologically." (See **Exhibit O**- Deposition of Chief Splaine, Exhibits #19, #22- "Dr. Fry report").

21. Ballinger then produced a report from his own neurologist, Dr. Douglas Katz at Braintree Rehab, Boston Medical Center, dated March 27, 2017. In this report, Dr. Katz stated that due to Ballinger's on-duty injury in 2006, Ballinger continues to have numbness in his hands and feet, hearing loss, memory problems, and symptoms consistent with a

diagnosis of PTSD. Dr. Katz reported that the PTSD and anxiety symptoms had improved, Ballinger still suffered "intermittent symptoms." Dr. Katz further concluded Ballinger could perform most of the activities of a police officer in "normal situations" but Ballinger's capacity may be compromised in more severe situations. (See **Exhibit P**- Deposition of Chief Splaine, Exhibit #18- "Dr. Katz reports").

22. Dr. Katz also stated that Ballinger had been able to work "as a detective, primarily working on prosecution duties and the SWAT Team, mainly at headquarters." Whether Plaintiff can perform selective duties within a job is not the standard to apply when determining whether an officer is fit to return to work. (See **Exhibit O**- Deposition of Chief Splaine, Exhibits #19, #22- "Dr. Fry report"; **Exhibit D**- Defendants' Position Statement, p. 5).

23. All police officers endure strenuous physical and psychological situations every day regardless of rank, title, position or assignment. In addition to the more obvious physical demands, police officers are also subjected to psychological and emotional stress. These pressures can lead to issues that could also lead to situations that affect public safety, and an officer's own safety. (See **Exhibit D**- Defendants' Position Statement, p. 4).

24. The vagueness of Dr. Katz's report, including his opinion that Ballinger's ability to perform the essential functions of a police officer in "more severe situations," compelled Chief Splaine to seek an independent medical opinion to determine Ballinger's fitness for duty. Chief Splaine also requested a neurologist report, not simply a psychologist report as previously provided by Dr. Fry, and ordered Ballinger to an IME with neurologist Dr. Judy Fine Edelstein. (See **Exhibit D**- Defendants' Position Statement, p. 4; **Exhibit A**- Deposition of Chief Splaine, p. #).

25. Dr. Edelstein issued three (3) reports based on various questions asked of her by Defendants. On June 22, 2017, the initial IME Report from Dr. Fine Edelstein, addressed to Town of Kingston's labor counsel, Attorney John Clifford, reveals that based on Ballinger's conditions it would be difficult for him to work as a police officer. (See **Exhibit D**- Defendants' Position Statement, p. 4; **Exhibit Q**- Deposition of Chief Splaine, Exhibits #25, #27, #28- "Edelstein reports").

26. Chief Splaine sought clarification from Dr. Edelstein on Ballinger's ability to perform the essential job functions of police sergeant. Dr. Edelstein advised that since Ballinger's underlying injury occurred in 2006, it would be unlikely that his cognitive and psychological issues would improve over time, and that they are permanent. Dr. Edelstein further advised that it was her medical opinion, that Ballinger was not able to perform the essential job functions of a SWAT team commander (one of Ballinger's assignments), and then further opined that Ballinger cannot perform the essential job functions of a police sergeant. (See **Exhibit Q**- Deposition of Chief Splaine, Exhibits #25, #27, #28- "Edelstein reports").

27. After three (3) doctors questioned and confirmed Ballinger's inability to perform the essential functions of a police officer, on October 2, 2017, Chief Splaine submitted an Application for Involuntary Disability Retirement to the Plymouth County Retirement Board (PCRB) on behalf of Ballinger. (See **Exhibit C**- Deposition of Chief Splaine, Exhibit #35- "Application of IDR").

28. On March 21, 2018, Plaintiff was notified of the medical panel results in connection with his application for involuntary retirement, which was subsequently approved with 4-0 vote of the Plymouth County Retirement Association (Board). Three independent doctors of the Regional Medical Panel of the Public Employee Retirement Administration Commission (PERAC) reviewed Ballinger's Involuntary Disability Application and corresponding medical reports and records, and all three doctors of the independent panel agreed that Ballinger was incapable of performing the essential duties of a police sergeant, that this incapacity is likely to be permanent, and that involuntary disability retirement is appropriate by answering the following questions in the affirmative, as well as providing detailed reports to support the findings:
    - "Is the member mentally or physically incapable of performing the essential duties of his or her job as described in the current job description?" (Dr. Fisher: "yes"; Dr. Rockett: "yes"; and Dr. McCloy: "yes");
    - "Is said incapacity likely to be permanent?" (Dr. Fisher: "yes"; Dr. Rockett: "yes"; and Dr. McCloy: "yes"); and
    - "Is said incapacity such as might be the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed?" (Dr. Fisher: "yes"; Dr. Rockett: "yes"; and Dr. McCloy: "yes").
(See **Exhibit R**- Commonwealth of Massachusetts Public Employee Retirement Administration Commission Regional Medical Panel Certificates).

29. Pursuant to the CBA, the burden to report to the Chief exacerbation and/or reappearance of symptoms from his 2006 injury was on Plaintiff. He failed to do so. Furthermore, Plaintiff never requested any accommodations. (See **Exhibit D**- Defendants' Position Statement, p. 5; **Exhibit N**- Deposition of Chief Splaine, Exhibit #2- "CBA").

30. As part of his duties as Town Administrator at the time and under instruction from the Town's labor counsel,, former Town Administrator, Defendant Fennessy, sent the Town of Kingston's Board of Selectmen, Ballinger's technical employer, a copy of Ballinger's Application for Involuntary Retirement. (See **Exhibit S**- Deposition of Robert Fennessy, pp. 28-35).

31. During Ballinger's deposition, he repeatedly stated that he had signed a form allowing the town constant access to his medical records and subsequent updates. (See **Exhibit T**- Deposition of Tim Ballinger, pp. 19, 55).

32. Ballinger also admitted in his deposition that he never formally requested an accommodation, and if any requests were made at all, they were made in 2008 in connection with his initial return. (See **Exhibit T**- Deposition of Tim Ballinger, pp. 34-35; **Exhibit A**- Deposition of Chief Splaine, p. 169).

RESPECTFULLY SUBMITTED
BY DEFENDANTS,

By its attorneys,

/s/*Megan K. Baker*
Bradford N. Louison, Esq. (BBO# 305755)
blouison@lccplaw.com
Megan K. Baker, Esq. (BBO# 703189)
mbaker@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305